## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NADER TURKI ALDOSSARI, on behalf** | : | |
| **of as parent and natural guardian of** | : | |
| **RAKAN NADAR ALDOSSARI,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH C. RIPP, *et al.*,** | : | **No. 20-3187** |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                                    JANUARY 26, 2021

Nader Turki Aldossari moves for leave to serve Defendant Mohammed bin Salman bin Abdulaziz Al Saud and Defendant Mohammed bin Nayef bin Abdulaziz Al Saud using substitute service under Rule 4(f)(3).[1]  Fed. R. Civ. P. 4(f)(3).  Defendants do not oppose.  For the following reasons, the motion is granted with respect to Mohammed bin Salman but denied with respect to Mohammed bin Nayef.

### BACKGROUND

In June 2020, Mr. Aldossari filed this breach of contract action against, among others, the Kingdom of Saudi Arabia, certain government-controlled entities there, and members of the House of Saud—the royal family of Saudi Arabia.  Doc. No. 1.  He amended the complaint in October to include the Crown Prince, Mohammed Bin Salman.  Doc. No. 10.  The action arises out of an

---

[1]     Plaintiff's Amended Complaint does not make clear whether he is intending to sue the Crown Prince and Former Crown Prince in their official or individual capacities.  But such distinction appears immaterial for purposes of service.  The Supreme Court held that an individual foreign official sued for conduct undertaken in his or her personal capacity is not a "foreign state" entitled to immunity from suit within the meaning of the Foreign Sovereign Immunities Act.  *Samantar v. Yousuf*, 560 U.S. 305 (2010).  To that end, even though Plaintiff is seeking to sue members of the Saudi royal family, they are not subject to the protections of the FSIA.

alleged agreement to provide oil from a refinery in St. Lucia. In the intervening six months, Mr. Aldossari has been unable to effect service on Crown Prince Mohammed Bin Salman and the Former Crown Prince Mohammed Bin Nayef Al Saud.

Mr. Aldossari forwarded two letters and packages with service documents to the Clerk of Court which were then sent by FedEx to both defendants at addresses in Saudi Arabia. Doc. Nos. 38, 39. The documents sent to the Crown Prince were addressed to Al Auja Palace and the Royal Court, both in Riyadh. Mr. Aldossari located both addresses from a pending case in the District of Columbia in which the Crown Prince is also a defendant. Doc. No. 52-3; *Aljabri v. Bin Salman Bin Abdulaziz Al Saud et al.*, No. 20-cv-2146 (TJK) (D.D.C. 2020). The service documents for the Former Crown Prince were sent to a separate address in Riyadh. FedEx could not complete delivery on any of the addresses. Doc. Nos. 52-4, 52-5.

Mr. Aldossari next requested that the Crown Prince's lawyers in *Aljabri* accept service on his behalf for this case. Counsel responded that he was not authorized to accept service. Doc. No. 52-6.

Mr. Aldossari seeks leave to serve the Crown Prince by mailing service documents to the Saudi Arabian Embassy in Washington, D.C., and by email and FedEx through his counsel in *Aljabri*. He also seeks leave to serve the Former Crown Prince by mailing service documents to the same Embassy.

## DISCUSSION

Rule 4(f) governs service of process upon individuals in foreign countries.[2]  As relevant here, the Rule provides three mechanisms for service:

---

[2]     Rule 4(m)'s deadline for serving process within 90 days does not apply to service in the foreign country. That said, the Court still considers whether the plaintiff has been diligent in attempting to serve a foreign defendant. *See U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 522 (E.D. Pa. 2010).

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means . . . by a method that is reasonably calculated to give notice:

> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; . . . or . . .
>
> (C) unless prohibited by the foreign country's law, by: . . .
>
> > (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

The Kingdom of Saudi Arabia is not a signatory to the Hague Convention.[3] The United States and Saudi Arabia have not entered into any treaties governing service of process.

The motion requests service of process under Rule 4(f)(3). Service under this rule is "neither a 'last resort' nor 'extraordinary relief.'" *ITP, Inc. v. OCI Co., Ltd.*, 2012 WL 13018330, at *3 (E.D. Pa. Mar. 26, 2012) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). A plaintiff moving for alternative service is not required to first attempt service in accordance with Saudi law before seeking leave for alternative service. "Whether to allow an alternative method of serving process is committed to the district court's sound discretion." *Marks v. Alfa Grp.*, 615 F. Supp. 2d 375, 377 (E.D. Pa. 2009).

That said, a plaintiff must show that "the facts and circumstance of the present case necessitate[ ] . . . district court intervention" and that the proposed method of service comports with due process. *Ehrenfeld v. Salim a Bin Mahfouz*, 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005). Service of process must be "reasonably calculated, under all the circumstance to apprise

---

[3]     Saudi Arabia has signed the Riyadh Arab Agreement for Judicial Co-operation (Riyadh Convention) and is a party to the GCC Convention for the Execution of Judgments, Delegations and Judicial Notifications. The United States is not a party to either agreement.

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Ace Am. Ins. Co. v. Meadowlands Developer Ltd. P'ship*, 140 F. Supp. 3d 450, 453 (E.D. Pa. 2015) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Court is satisfied that judicial intervention is warranted here. Plaintiff cannot avail himself of service under the Hague Convention because Saudi Arabia is not a signatory. Although he has not attempted to engage a process server, he explains that personal service poses a risk of harm to a process server in light of recent allegations against the Crown Prince, including alleged involvement in the murder of journalist Jamal Khashoggi and the attempted murder of Saad Aljabari. And, Plaintiff has requested that U.S. counsel for the Crown Prince in another pending action accept service on his behalf, but counsel declined to do so. As for the Former Crown Prince, Plaintiff represents that, because he is currently under house arrest, and "effectively a ward/prisoner" of the state, his address is unknown.

So, Plaintiff proposes two means of service: (1) by mail and email to the Crown Prince's U.S. counsel and (2) by mail to the Saudi Arabian Embassy in Washington, D.C. The Court "need only select one reliable mechanism," *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013). Although there is no hierarchy of means of alternative service, the Court should account for the "necessities of a particular case." *RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at *4 (S.D.N.Y. Aug. 10, 2007).

Service on the Crown Prince's U.S. counsel comports with due process considerations. Counsel is in communication with the client—albeit for a different civil case—and will know how to locate the Crown Prince to make him aware of this suit. "Court-ordered service on counsel made under Rule 4(f)(3) serves as effective authorization 'by law' for counsel to receive service." *Fridman*, 2007 WL 2295907, at *6; *see de Leon v. Abudawood*, 2018 WL 6321632, at *4 (C.D. Cal. Oct. 23, 2018) (granting request for alternative service on defendants' Saudi counsel via

4

FedEx); *Ehrenfeld*, 2005 WL 696769, at \*3 (upholding service on defendant's attorney under Rule 4(f)(3)). To that end, the Court authorizes service by both e-mail and certified mail on the Crown Prince's counsel. *See Juniper Networks, Inc. v. Bahattab*, 2008 WL 250584, at \*1 (D.D.C. Jan. 30, 2008) (collecting cases permitting service by e-mail as an alternative method "especially when the defendant lives abroad and is avoiding service").

Plaintiff has leave to serve the Crown Prince's counsel within 30 days of entry of the Order accompanying this Memorandum. Accordingly, the Court does not authorize additional service care of the Embassy as to the Crown Prince.

But as to Plaintiff's only proposed method to serve the Former Crown Prince, the Court cannot conclude that the proposed method is reasonably calculated to give actual notice to that defendant. Plaintiff proposes sending the documents via FedEx to the embassy. To be sure, since he was reportedly placed under house arrest, the Former Crown Prince's whereabouts remain unknown. Notwithstanding the unusual circumstances of the Former Crown Prince's alleged detention, service must still satisfy due process. There is no way of knowing whether service of process in care of the Embassy will in any way reach the Former Crown Prince to apprise him of this suit. *Cf. Strange on Behalf of Strange v. Islamic Republic of Iran, Interest Section*, 964 F.3d 1190, 1194 (D.C. Cir. 2020) (affirming district court's finding that service was not perfected when there was no evidence that Palace envoy was authorized to accept service on Iranian President's behalf). The Court declines to exercise its discretion to permit service in this manner at this time.[4]

---

[4]     Although Plaintiff does not address this issue, the Court questions whether service on the Embassy is consistent with international law. Plaintiff's proposed methods must comply with the literal text of Rule 4(f). "[T]he place to start . . . is the text of [the] Rule." *Freedom Watch, Inc. v. Org. of Petroleum Exporting Countries*, 107 F. Supp. 3d 134, 137 (D.D.C. 2015). Rule 4(f) requires that the method of alternative service is "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3).
        The 1961 Vienna Convention on Diplomatic Relations provides that the "premises of the mission shall be inviolable." Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. No. 7502. In related contexts, foreign states have challenged service mailed to their embassies as violating Article 22 of the Vienna Convention. Most recently, interpreting the FSIA, the Supreme Court held that a foreign state is not properly served when a

## CONCLUSION

For the reasons set out in this Memorandum, the Court grants Mr. Aldossari's motion in part for leave to serve by alternate means.  An appropriate order follows.


BY THE COURT:


GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

service packet naming the foreign minister is mailed to the embassy in the United States.  *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1061 (2019).

The Court understands that Plaintiff is not proposing service of process on the embassy itself or on any of its diplomats as agents of the Saudi Arabian government.  Nor is the FSIA implicated as to these individual defendants. *See supra* n.1.  Rather, Plaintiff is seeking to use the embassy as a conduit of service. But, at least one sister Circuit has held that the "distinction between service 'on' the embassy or 'via' the embassy thus seems a meaningless semantic distinction."  *Kumar v. Republic of Sudan*, 880 F.3d 144, 157 (4th Cir. 2018).  In light of the jurisprudence cautioning against the use of embassies for service of process and to avoid a situation of noncompliance with the Vienna Convention—and by extension Rule 4(f)(3)— the Court will not authorize service sent to the embassy in Washington at this time.

But the Court's decision today does not leave Plaintiff without options.  He could seek to serve the Former Crown Prince by publication, in more than a single remote location for example.